UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NADIA YOUKELSONE,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     Civil Action No. 09-1278 (RMC)
                                     )
FEDERAL DEPOSIT INSURANCE            )
CORPORATION, as Receiver of          )
Washington Mutual Bank,              )
                                     )
          Defendant.                 )
_____    )

OPINION

Nadia Youkelsone once owned a two-family residence in Brooklyn, New York. After she failed to make mortgage payments, the mortgage holder, Federal National Mortgage Association, initiated foreclosure proceedings in September 2001. Years of litigation followed, with Ms. Youkelsone, an attorney, representing herself *pro se*. In this particular suit, Ms. Youkelsone complains that Washington Mutual Bank, which held the mortgage before Fannie Mae and continued to service it after its assignment to Fannie Mae, is liable to her for breach of contract, various torts, abuse of process, and other legal wrongs. The Federal Deposit Insurance Corporation stands in the shoes of Washington Mutual Bank as its Receiver since the Bank's collapse in 2008. FDIC-Receiver moves to dismiss the Second Amended Complaint.

The D.C. Circuit Court of Appeals has clarified that Ms. Youkelsone has standing to sue WaMu. *See Youkelsone v. FDIC*, 660 F.3d 473 (D.C. Cir. 2011). Upon FDIC-Receiver's renewed motion to dismiss on remand, this Court determines that Ms. Youkelsone's claims are barred by the relevant statutes of limitations. The Second Amended Complaint will be dismissed.

1

# I. FACTS

Ms. Youkelsone owned a two-family dwelling on East 18th Street, Brooklyn, New York, when this saga began.  Second Am. Compl. [Dkt. 40] (Compl.) ¶ 16.  Ms. Youkelsone had purchased the property with a Note and Mortgage from GFI Mortgage on March 3, 1997.  *Id.* ¶ 17; *see also id.,* Ex. 1 (Mortgage), *id.,* Ex. 2 (Note).  That same day, GFI Mortgage assigned the Note and Mortgage to Fleet Mortgage Corporation.  *Id.* ¶ 18.  Fleet serviced and/or owned the Note and Mortgage until Fleet merged into Washington Mutual Home Loans (WaMu), a subsidiary of Washington Mutual, Inc. (WMI).  *Id.* ¶¶ 20–21.  Within months, on August 25, 2001, WaMu in turn assigned the Note and Mortgage to Fannie Mae.[1]  *Id.* ¶ 23. Fannie Mae recorded its interest in the New York City Registry's office on November 15, 2001, after the relevant events began to unfold.  *Id.* ¶ 26.  Apparently no notice of the assignment was sent at that time to Ms. Youkelsone, and WaMu continued to service the Note and Mortgage after the assignment to Fannie Mae, a cause for some confusion.  *Id.* ¶¶ 24, 28–29.

Fannie Mae, taking the position that Ms. Youkelsone was in default on the Note, initiated a foreclosure action in October 2001 in the Supreme Court of the State of New York in Kings County, Case No. 36834/01 (Foreclosure Case).  *Id.* ¶¶ 25–28; *Fed. Nat'l Mortg. Ass'n v. Youkelsone,* No. 36834/01 (N.Y. Sup. Ct. filed Oct. 4, 2001).[2]  Although Fannie Mae filed the Foreclosure Case, Ms. Youkelsone alleges that WaMu "prepared, executed and filed debt verifications" and acted together with Fannie Mae in "wrongful actions . . . including but not limited to foreclosure action, bankruptcy proceeding, contract of sale, subsequent actions in

---

[1] The Complaint omits the final digit of the year of this event, but the rest of the record confirms it to be 2001.  *E.g.*, Pl. Opp. Def. Mot. Dismiss [Dkt. 45] (Pl. Opp.) at 5.

[2] Ms. Youkelsone avers that the Foreclosure Case was filed in September, although the publicly available records show that it was filed on October 4, 2001.

satisfaction of mortgage."  Compl. ¶¶ 31–32.  She complains that Fannie Mae and WaMu "aided and abetted each other in commission of tort[i]ous actions against [her] and in facilitation of the scheme designed to defraud and to misappropriate [her] property and [her] property right."  *Id.* ¶ 34.

Fannie Mae's efforts to foreclose were contested long and loudly by Ms. Youkelsone, beginning immediately in 2001.  *See Fed. Nat'l Mortg. Ass'n v. Youkelsone* (*Foreclosure Case Supreme Court Sanctions Opinion*), No. 36834/01, at *5 (N.Y. Sup. Ct. April 4, 2003) (denying Ms. Youkelsone's motion for sanctions; granting Fannie Mae's motion for sanctions against Ms. Youkelsone), attached as Def. Mem. Supp. Mot. Dismiss (Def. Mem.), Ex. 1 [Dkt. 41-2].  Shortly after Fannie Mae filed the Foreclosure Case, Ms. Youkelsone filed a separate suit against Fleet Mortgage Corporation in the Supreme Court of New York in Kings County (State Court Case).  *See Youkelsone v. Fleet Mortg. Corp.*, No. 50145/2001 (N.Y. Sup. Ct. filed Dec. 24, 2001).  The Supreme Court denied Ms. Youkelsone's motion to dismiss the complaint in the Foreclosure Case, and the Appellate Division affirmed.  *See Fed. Nat'l Mortg. Ass'n v. Youkelsone* (*Foreclosure Case Appellate Division Opinion*), 755 N.Y.S.2d 730 (App. Div. 2003).  The Appellate Divison held that Fannie Mae had standing to bring the Foreclosure Case because the assignment from WaMu was valid and that Ms. Youkelsone's unspecified "remaining contentions" were meritless.  *Id.* at 730.

Ms. Youkelsone contends that her equitable interest in the property during the Foreclosure Case was over $600,000, which "far exceeded" the Note, worth approximately $150,000 in principal.  Compl. ¶¶ 36, 79.  Throughout the foreclosure proceedings, Ms. Youkelsone attempted to sell her property privately, but WaMu is alleged to have "continuously rejected" and/or "ignored" her pleas.  *Id.* ¶¶ 37–38.  She alleges that she was forced to "file a

Chapter 13 bankruptcy" as a direct result of "the defendant's wrongdoings." *Id.* ¶ 39.  The records of the Bankruptcy Court for the Eastern District of New York reveal that Ms. Youkelsone filed a voluntary Chapter 13 petition on June 19, 2003, and, on WaMu's motion, the Bankruptcy Court dismissed the case pursuant to 11 U.S.C. § 1307(c) on November 24, 2003. *See In re Nadia Youkelsone*, Bankr. No. 1-03-18019 (Bankr. E.D.N.Y. filed June 19, 2003).  Ms. Youkelsone complains that WaMu falsely informed the bankruptcy court that she was delinquent on her Note, failed to apply her payments to the Note, and, "together with [Fannie Mae] engaged in[] the scheme to misappropriate the equity interest in [her] dwelling, and to deprive [her] of the benefit of the Bankruptcy Code" by misrepresentations to that court.  Compl. ¶¶ 40-50.  "As a result of the Defendant's continuous fraudulent scheme, [Ms. Youkelsone's] bankruptcy plan was not approved and [the] bankruptcy petition was dismissed in December, 2003." *Id.* ¶ 53.

In August 2002, the New York Supreme Court dismissed the State Court Case, and the Appellate Division affirmed. *Youkelsone v. Fed. Nat'l Mortg. Ass'n* (*State Court Case Appellate Division Opinion*), 765 N.Y.S.2d 792, 792 (App. Div. 2003) ("To the extent plaintiff's claims are dependent upon the alleged invalidity of the assignment, an allegation conclusively rejected (*see* [*Foreclosure Case Appellate Division Opinion*]), or were otherwise asserted and necessarily decided in consequence of plaintiff's motion practice in the Kings County foreclosure action, they are barred by the principles of collateral estoppel.  Moreover, the complaint, even when viewed in the light most favorable to plaintiff, states no cognizable claim for relief." (citations omitted)).

Judgment was entered in the Foreclosure Case in April 2003, and the sum of $177,609.44, with interest, was ordered due to Fannie Mae. *Fed. Nat'l Mortg. Ass'n v. Youkelsone* (*Foreclosure Case Judgment of Foreclosure*), No. 36834/01, at *4 (N.Y. Sup. Ct.

Apr. 30, 2003), attached as Def. Mem. Ex. 2 [Dkt. 41-3]. The Supreme Court ordered that Ms.

Youkelsone's property be sold at public auction. *Id.*at *2. Ms. Youkelsone was also sanctioned

in the amount of $6,000 for her obstreperous conduct throughout the Foreclosure Case.

*Foreclosure Case Supreme Court Sanctions Opinion* at *5–7.

Early in 2004, Ms. Youkelsone continuing trying to sell her property privately.

She alleges that she entered into a workout plan "with the Defendant [WaMu]" on February 5,

2004, and provided all requested documentation but "Defendant [WaMu] did not respond and

made no determination of [Ms. Youkelsone's] application to cure the default." Compl. ¶¶ 55–

57.[3] Despite her efforts, "Defendant [WaMu]" scheduled a foreclosure sale on February 26,

2004. *Id.* ¶ 58. Ms. Youkelsone delivered "a copy of a written contract to Defendant [WaMu]"

to obtain permission to sell the property herself on February 19, 2004, and "Defendant [WaMu]

formally consented and gave permission . . . and stayed the foreclosure sale." *Id.* ¶¶ 62–63.

When, however, Ms. Youkelsone was ready to move to settlement and requested a payoff

statement on June 21, 2004, "Defendant [WaMu] failed to respond." *Id.* ¶ 67. Despite "at least

five" efforts, Ms. Youkelsone was unable to obtain the documentation needed to close on the

private sale; instead, "the defendants" filed an application in October 2004 to conduct an auction

on November 18, 2004. *Id.* ¶¶ 73–74. Ms. Youkelsone alleges that "[i]n its application for

foreclosure dated October 22, 2004 the defendant [WaMu] demanded the sum in the amount of

$177,609.44 which included excessive interest rates, improper legal fees and expenses not

incurred by the defendant." *Id.* ¶ 75.

---

[3] These allegations may be perceived to be inconsistent. It may be that Ms. Youkelsone only
applied to work out her default and that she got no response to that application, not that both
parties agreed to a workout plan.

The Court pauses to note the confusion between WaMu and Fannie Mae present throughout the Complaint in this case, as well as the Complaint in Ms. Youkelsone's other case before this Court, Civ. No. 10-1375. Ms. Youkelsone has separate lawsuits against WaMu (through FDIC-Receiver) and Fannie Mae, but her recitation of allegations in the instant Complaint against WaMu clearly includes some actions, such as moving to foreclose in October 2004 and demanding payment, that only Fannie Mae could have taken. This confusion also surfaced in an unsuccessful lawsuit against WaMu's parent corporation, Washington Mutual, Inc. (WMI), wherein Ms. Youkelsone alleged that WMI took and was liable for these same acts of interference, falsehood and unfair dealings. *In re Wash. Mut., Inc.* (*Bankruptcy Court Opinion*), Bankr. No. 08-12229, Adv. No. 09-50039, 2010 WL 3238903, at *1 (Bankr. D. Del. Aug. 13, 2010).[4] Ms. Youkelsone filed another lawsuit in the New York Supreme Court of Suffolk County on February 9, 2009, this time taking aim at "Washington Mutual Home Loans." *Youkelsone v. Washington Mutual Home Loans*, No. 40405/2008 (N.Y. Sup. Ct. filed Feb. 9, 2009). The publicly available records confirm that the case is "disposed" but provide no further details.

---

[4] On September 25, 2008, the Office of Thrift Supervision seized WaMu and appointed FDIC as Receiver; on that same date, FDIC-Receiver sold substantially all of the assets and liabilities of WaMu to JPMorgan Chase Bank, National Association. *Bankruptcy Court Opinion*, 2010 WL 3238903, at *1. Without its subsidiary WaMu, its single asset, WMI filed for bankruptcy protection in Delaware, where Ms. Youkelsone pursued these same allegations against WMI. She told the Delaware Bankruptcy Court handling the WMI bankruptcy that she had "entered into a workout plan with WMI and on February 5, 2004, provided WMI with all the required documents and information . . . [but] WMI made no determination on [her] application to cure the default." *Id.* (citations omitted). WMI allegedly scheduled a foreclosure sale on February 26, 2004, but then agreed with Ms. Youkelsone that she could sell the property privately. *Id.* at *1–2 (citations omitted). WMI thereafter refused or failed to send settlement papers, as requested, to Ms. Youkelsone, and the matter dragged on into the fall of 2004, when WMI finally sent her the papers needed for settlement and Ms. Youkelsone sold the property at a loss. *Id.* (citations omitted).

On October 24, 2004, prior to the auction allegedly scheduled for November 18, Ms. Youkelsone received the payoff statement needed to close the sale of the property. Compl. ¶ 78. It included finance charges for the months of delay, attorney fees, and other fees and charges, which she disputes. *Id.* ¶ 80. Ultimately, however, Ms. Youkelsone sold the property privately on November 11, 2004, for an undisclosed price. *Id.* ¶¶ 82–83. The Complaint alleges that due to the unreasonable delay in providing a payoff statement and other closing documents, as well as WaMu and Fannie Mae's other alleged acts, Ms. Youkelsone lost her property and equity of at least $630,000; lost her place of work at a value of at least $15,000/year; lost rental income in excess of $20,000/year; and lost her reputation and the good name of her business to a value of at least $400,000/year. *Id.* ¶¶ 90–94. Ms. Youkelsone also complains that WaMu and/or Fannie Mae "failed to discontinue" the Foreclosure Case "[u]pon receival [sic] of full payment under the loan," causing her to "incur further financial damages and loss of substantial property rights." *Id.* ¶¶ 99–100. The foreclosure action was maintained until October 2009, and during "the 2008–2009 discontinuance proceeding defendant concealed the documents and legal papers to hide its true identity." *Id.* ¶¶ 105, 107–08.

From these events, Ms. Youkelsone complains of FDIC-Receiver/WaMu: Count I, abuse of process in the New York State foreclosure and bankruptcy cases; Count II, breach of contract on the Note and Mortgage by over-charging fees and expenses, failing to provide documents, and acting in bad faith; Count III, unjust enrichment through exorbitant fees, excess charges and wrongfully-retained monies; Count IV, bad faith in aiding and abetting Fannie Mae and lacking fair dealing; Count V, violation of N.Y. Real Prop. Acts § 1921(4); Count VI, Violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1639; Count VII, deceptive consumer practices leading to excessive fees, interest and other charges; Count VIII, misrepresentation,

fraud and deceit; Count IX, intentional infliction of emotional harm; Count X, intentional

interference with business relations; Count XI, economic duress; Count XII, violation of the

Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.*; and Count

XIII, aiding and abetting Fannie Mae in committing fraud, misrepresentation, conversion and

misappropriation.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim.  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a) requires that a complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(1).  A complaint must be sufficient "to give a defendant fair notice of what

the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations omitted).  Although a complaint does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief  "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Id.*  The facts alleged "must be enough to raise a right to relief above the

speculative level."  *Id.*  Rule 8(a) requires an actual showing and not just a blanket assertion of a

right to relief.  *Id.* at 555 n.3.  "[A] complaint needs *some* information about the circumstances

giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16

n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged

in the complaint, documents attached to the complaint as exhibits or incorporated by reference,

and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508

F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court may take judicial notice of public records from other proceedings. *Abhe & Svoboda, Inc.*, 508 F.3d at 1059; *see Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of other proceedings); *Mintz v. FDIC*, 729 F. Supp. 2d 276, 277 (D.D.C. 2010) (judicial notice of statement contained in an SEC filing); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007) (in examining a Rule 12(b)(6) motion to dismiss, a court "must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice.").  Specifically, a court may take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty. *Mintz*, 729 F. Supp. 2d at 278 n.5 (internal citation omitted).

Nevertheless, the matters to be noticed must be relevant, and it is within the discretion of the court to decline to take judicial notice. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) (holding that the district court did not abuse its discretion in denying a motion to take judicial notice of congressional materials relating to the Senate Finance Committee's investigation of AARP's health insurance practices).

## III.  ANALYSIS

FDIC-Receiver asks the Court to dismiss Ms. Youkelsone's Complaint in full.  It argues that all of her claims are barred by the applicable statutes of limitations; that most of her claims are barred by collateral estoppel; and that the Complaint fails to state any claim upon which relief may be granted.  Ms. Youkelsone opposes the motion.  She contends that the statutes of limitations do not make her action untimely; that collateral estoppel does not bar any portion of her Complaint; and that she sufficiently states all claims.  As set forth below, the Court concludes that all of Ms. Youkelsone's claims are untimely and dismisses the Complaint.[5]

### A.  Statutes of Limitations

The first issue the Court must confront is whether Ms. Youkelsone's claims are timely.  She brings claims under New York state law and two federal statutes, TILA (Count VI) and RICO (Count XII).  The two federal statutes have their own statutes of limitations, but the parties dispute whether the Court should apply the New York or District of Columbia statutes of limitations to Ms. Youkelsone's state law claims.  Ms. Youkelsone also argues that, even if the

---

[5] Because it concludes that all of Ms. Youkelsone's claims are untimely, the Court does not determine whether they are also precluded by any of the myriad of prior cases Ms. Youkelsone has filed or whether she has sufficiently pled a cause of action under any of the thirteen counts. As noted briefly below, however, the Court strongly doubts that Ms. Youkelsone could maintain any of the putative causes of action due to issue preclusion and/or failure to state a claim.

more restrictive District of Columbia statutes apply, her Complaint is timely for a number of other reasons.

The Court first determines that the District of Columbia's statutes of limitations bar Ms. Youkelsone's state law claims. The Court then addresses the TILA and RICO statutes of limitations, concluding that those claims are also untimely. Lastly, the Court rejects Ms. Youkelsone's alternative arguments as to why her claims are timely.

### 1.  Because District of Columbia Statutes of Limitations Apply, All of Ms. Youkelsone's State Law Claims Are Subject to a Three-Year Limitations Period and Are Time-Barred

Ms. Youkelsone sues FDIC-Receiver in the District of Columbia pursuant to 12 U.S.C. § 1821(d)(6)(A)(ii) because FDIC is acting as Receiver for WaMu under the Financial Institutions Reform, Recovery, and Enforcement Act, Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in scattered sections of 12 U.S.C.). FIRREA thus extends a special kind of federal jurisdiction outside the scope of 28 U.S.C. § 1331, the normal source of federal question jurisdiction. *See* 12 U.S.C. § 1821(d)(6)(A)(ii) (providing that this Court "shall have jurisdiction" to review a disallowed claim against a depository institution for which the FDIC is receiver). Inasmuch as her suit is not based on the diversity of the parties' citizenship, but on an explicit grant of federal jurisdiction, Ms. Youkelsone argues that federal common law and federal choice-of-law principles must guide the statute of limitations analysis, not the law of the forum, the District of Columbia. Pl. Opp. Def. Mot. Dismiss [Dkt. 45] at 13–14. She concludes that New York has much the greater interest in the controversy, so its law should apply. *Id.* at 14. FDIC-Receiver rests its argument to the contrary on *A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454, 1459–60 (D.C. Cir. 1995), which, in turn, cited *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994) (addressing FIRREA specifically and

noting that "matters left unaddressed in such a [comprehensive and detailed] scheme are presumably left subject to disposition provided by state law"). *See* Def. Mem. at 5.

        *A.I. Trade* controls the choice-of-law outcome here.  The Circuit has determined that the normal rule—"a federal court applies state law when it decides an issue not addressed by federal law"—applies "regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction." *A.I. Trade*, 62 F.3d at 1463.  This is the rule irrespective of whether the parties are in federal court because of diversity of citizenship or some other basis. *Id.*  "The *Erie*[6] doctrine is not simply a rule of convenience for diversity cases but an acknowledgement of the powers of the several states . . . ." *Id.* at 1464.  Moreover, although *A.I. Trade* concerned the Edge Act, 12 U.S.C. § 611 *et seq.*, the D.C. Circuit recently held in a case nearly identical to this one, albeit in an unpublished opinion, that *A.I. Trade*'s rule extends to cases where jurisdiction is based on FIRREA, and thus D.C. choice of law rules apply to state law claims in such cases. *DuBois v. Washington Mutual Bank*, No. 10-5333, 2012 WL 5882567, at *1 (D.C. Cir. Nov. 8, 2012).  Ms. Youkelsone's arguments to the contrary are unavailing; this Court is bound by Circuit precedent.

        The Court thus applies the District of Columbia's choice-of-law rules to determine whether to apply the statutes of limitations of New York or the District of Columbia. In the District, statutes of limitations are procedural, which means that the statutes of limitations of the forum—i.e., those of the District of Columbia, not those of New York—apply to Ms. Youkelsone's claims. *See A.I. Trade*, 62 F.3d at 1458; *DuBois*, 2012 WL 5882567, at *1 ("We conclude that the District Court correctly applied District of Columbia choice-of-law rules and

---

[6] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938) (holding that "federal courts exercising jurisdiction in diversity of citizenship cases should apply state law except in 'matters governed by the Federal Constitution or by Acts of Congress'").

the three-year statute of limitations indicated."); *see also Namerdy v. Generalcar*, 217 A.2d 109,

113 (D.C. 1966) ("[A] limitation on the time of suit is procedural and is governed by the law of

the forum."). All of Ms. Youkelsone's claims, except Counts VI (TILA) and XII (RICO), are

founded in state[7] law and thus are governed by the District's statute of limitations, D.C. Code

§ 12-301. That provision provides for a limitations period of three years for cases arising from

"a simple contract, express or implied," *id.* § 12-301(7), and for cases "for which a limitation is

not otherwise specially prescribed," *id.* § 12-301(8).

Each of her state-law claims falls into one of those two categories. Accordingly,

a three-year statute of limitations applies to Ms. Youkelsone's claims for: abuse of process

(Count I),[8] breach of contract (Count II),[9] unjust enrichment (Count III),[10] bad faith (Count

IV),[11] New York Real Property Actions and Proceedings Law § 1921(4) (Count V),[12] deceptive

---

[7] For these purposes, the District of Columbia is treated as a state as opposed to a federally administered entity.

[8] D.C. Code §12-301(8) applies. *See Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 699 (D.C. Cir. 2009); *In re Rothenberg*, 173 B.R. 4, 11 n.5 (Bankr. D.D.C. 1994).

[9] D.C. Code § 12-301(7) applies. *See Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1198 (D.C. 1984).

[10] D.C. Code § 12-301(7) applies. *See News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1220–21 (D.C. 2005).

[11] An independent "bad faith" claim, which is in the ordinary course limited to the insurance context, *e.g. Pavia v. State Farm Mut. Auto. Ins. Co.*, 626 N.E.2d 24, 28 (N.Y. 1993), is not recognized in the District. *See Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 9–16 (D.D.C. 2007) (discussing issue comprehensively). The D.C. Code catch-all statute of limitations, § 12-301(8), thus applies.

[12] Count V, over which the Court has supplemental jurisdiction, is governed by the District's residual 3-year statute of limitations in D.C. Code § 12-301(8). *See Dubois v. Wash. Mut. Bank*, Civ. No. 09-2176, 2010 WL 3463368, at *6 (D.D.C. Sept. 3, 2010) (applying residual limitations period to a New Jersey statutory claim against FDIC-Receiver), *aff'd*, 2012 WL 5882567 (D.C. Cir. Nov. 8, 2012); *A.I. Trade*, 62 F.3d at 1463. New York Real Property Actions and Proceedings Law § 1921(4) itself contains no limitations period. *See Lester v. Bickford*, 452

practices (Count VII),[13] misrepresentation, fraud and deceit (Count VIII),[14] intentional infliction

of emotional distress (Count IX),[15] intentional interference with business relations (Count X),[16]

economic duress (Count XI),[17] and aiding and abetting (Count XIII).[18]

   Under D.C. law, the statute of limitations period begins to run "from the time the

right to maintain the action accrues."  D.C. Code § 12-301.  Because the D.C. Code does not

define "accrues," the general rule in the District is that "[w]here the fact of an injury can be

readily determined, a claim accrues for purposes of the statute of limitations at the time the

injury actually occurs."  *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (*en banc*)

(citations omitted).  "If the existence of an injury is not readily apparent, however, the claim does

not accrue until the plaintiff, exercising due diligence, has 'discovered or reasonably should have

discovered all of the essential elements of her possible cause of action, i.e., duty, breach,

---

N.Y.S.2d 124, 125 (App. Div. 1982) (contrasting action under § 1921, governed by general New York six-year statute of limitations, with action under N.Y. Real Prop. Acts. § 1501, which has a special, longer limitations period).

[13] D.C. Code § 12-301(8) applies.  *See Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1476 (D.D.C. 1998).

[14] D.C. Code § 12-301(8) applies.  *See Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1489 (D.C. Cir. 1989).

[15] D.C. Code § 12-301(8) applies.  *See Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997).

[16] D.C. Code § 12-301(8) applies.  *See Zandford v. Nat'l Ass'n Sec. Dealers, Inc.*, 30 F. Supp. 2d 1, 23 (D.D.C. 1998), *aff'd*, 221 F.3d 197 (D.C. Cir. 2000).

[17] The District does not recognize "economic duress" as a cause of action.  *See Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 794 F. Supp. 434, 438 (D.D.C. 1992).  D.C. Code § 12-301(8) thus applies.

[18] D.C. Code § 12-301(8) applies.  *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006).

causation and damages.'" *Farris v. Compton*, 652 A.2d 49, 54 (D.C. 1994) (quoting *Colbert*, 641 A.2d at 473).

Ms. Youkelsone, who filed her complaint in this Court on July 10, 2009, does not contest the analysis of D.C. law presented by FDIC-Receiver; she only contests whether it applies at all because she believes New York law should apply.  Thus, she has waived any right to contest these points now.  *See, e.g.*, *United States v. Real Prop. Identified as: Parcel 03179– 005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (collecting cases concluding that a party concedes an argument raised by an opposing party's memorandum by filing a responsive memorandum that neglects to address the argument).  They are, in any event, fundamental principles that are well settled in local law.  Moreover, there is no doubt that Ms. Youkelsone was contemporaneously aware of her alleged injuries and that she has repeatedly asserted her legal rights in other fora long before July 10, 2006, three years prior to filing her complaint.  Her claims are untimely.

The publicly available records, of which the Court takes judicial notice, confirm that Ms. Youkelsone was aware of her alleged injuries likely as early as 2001 and certainly no later than November 2004.  Her efforts to dismiss the Foreclosure Case, *Fed. Nat'l Mortg. Ass'n v. Youkelsone*, No. 36834/01 (N.Y. Sup. Ct. filed Oct. 4, 2001), were rejected on appeal, *Foreclosure Case Appellate Division Opinion*, 755 N.Y.2d at 730, and she was sanctioned for acting obstreperously and erratically and for filing frivolous motions, *Foreclosure Case Supreme Court Sanctions Opinion*, No. 36834/01, at *5.  Indeed, in the Foreclosure Case, Ms. Youkelsone extensively asserted variants of the same chimerical claims she presses here, such as her theory that the "foreclosure proceeding [was] fraudulent."  *Id.* at *4.  One bite at the apple might have been enough for most litigants, but Ms. Youkelsone's quixotic crusade encompassed several

more nibbles, each unsuccessful.  *See Youkelsone v. Fleet Mortg. Corp.*, No. 50145/2001 (N.Y. Sup. Ct. filed Dec. 24, 2001) (collateral attack on foreclosure proceeding, dismissed by the Supreme Court and affirmed by the Appellate Division in 2003); *In re Youkelsone*, No. 03-18019 (Bankr. E.D.N.Y. 2003) (personal bankruptcy proceeding, dismissed in 2003); *Bankruptcy Court Opinion*, 2010 WL 3238903, at *1; *Youkelsone v. Fed. Nat'l Mortg. Ass'n*, Civ. No. 10-1705 (D.D.C. filed Oct. 5, 2010) (companion case currently pending).

According to her own allegations, the latest date on which the claims here accrued was either October 24, 2004, when WaMu allegedly provided Ms. Youkelsone with a final payoff statement, Compl. ¶ 78, or November 11, 2004, when she closed on the sale of the property at a loss, *id.* ¶ 83.  Notably, the Complaint alleges that WaMu harmed her as early as 2001, claims that are even more stale.  *Id.* ¶¶ 28-32.  But Ms. Youkelsone filed this action against FDIC-Receiver for WaMu on July 20, 2009, almost five years after the Bank's last relevant act and well outside the relevant three-year D.C. statutes of limitations.  *See Dubois*, 2012 WL 5882567, at *1 (affirming dismissal of nearly identical claims as barred by District's three-year statutes of limitations).

Notwithstanding that her claims clearly accrued no later than November 2004, Ms. Youkelsone argues that the Complaint is timely because she alleges "continuing wrongful conduct" and "continuing injury stemming from the defendant's direct act and wrongdoings." Pl. Opp. at 18.  She relies on paragraphs 99 through 113 of the Complaint, which detail how "the Defendant" did not officially discontinue the Foreclosure Case until October 2009 "with intent to cause the damages to [Ms. Youkelsone] and to her reputation."  Pl. Opp. at 18.  This argument is factually flawed, however: Fannie Mae was the plaintiff in the Foreclosure Case, meaning that the delay in vacating the New York court's order in that case cannot be attributed to WaMu or

FDIC-Receiver.  Moreover, the mere fact that the Foreclosure Case remained administratively

open until September 24, 2010, has no bearing on Ms. Youkelsone's ability, or inability to

discover the "essential elements" of the causes of action she has asserted.[19]  *See Farris*, 652 A.2d

at 54; *see also In re Wash. Mut., Inc.*, 2010 WL 3238903, at *6 n.5 (reaching same conclusion as

to Ms. Youkelsone's allegations regarding 2008 and 2009).  This is especially true given Ms.

Youkelsone's extensive history of litigating these claims, her failure to plead facts to support her

bare assertion that the pendency of the foreclosure proceeding somehow caused her damages,

and the lack of any explanation why she herself could not have advised the New York Supreme

Court that the Foreclosure Case was moot.  *See Dubois*, 2012 WL 5882567, at *1 (affirming

dismissal of nearly identical claims on statute of limitations ground despite argument that

"ongoing acts that occurred within the three-year period prior to the filing of [the] Complaint"

because plaintiff was "aware of the defendants' alleged improprieties" more than three years

prior to filing).

   The three-year statutes of limitations for all of Ms. Youkelsone's state law claims

began to run no later than November 11, 2004.  *See* D.C. Code § 12-301(7), (8).  Because none

of Ms. Youkelsone's other arguments as to why these claims are timely is persuasive, as

explained below, Counts I through V, VII through XI, and XIII will all be dismissed as untimely.

### 2.  Ms. Youkelsone's Federal Law Claims

   Federal law provides the statutes of limitations for Ms. Youkelsone's TILA claim

(Count VI) and RICO claim (Count XII).  A TILA claim must be brought "within one year from

the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  "In this circuit, violation of

---

[19] This might be different if Ms. Youkelsone's only theory of damages was being in the
Damoclean situation of having faced the threat of foreclosure for over five years.  Those are not
the facts here; the property passed to someone else's hands no later than November 2004.

TILA occurs no later than the date of settlement of [the] loan . . . ." *Lawson v. Nationwide Mortg. Corp.*, 628 F. Supp. 804, 807 (D.D.C. 1986) (citing, *inter alia*, *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1380 (D.C. Cir. 1980)).

The actions of which Ms. Youkelsone complains under TILA concern "deliberate and willful dilatoriness in providing the closing documents." Compl. ¶ 165. This wrong, if not its consequences, ended on October 24, 2004, when a payout statement and documents for closing were supplied to Ms. Youkelsone, after which she sold the property. *Id.* ¶ 78. There is no doubt that Ms. Youkelsone believed at the time that she was wronged by delayed delivery of the necessary documents, knew to whom to complain, did complain multiple times, and was not the victim of any fraudulent concealment in regard to the untimeliness of settlement papers. Because the "date of the occurrence of the violation" was no later than October 24, 2004, and Ms. Youkelsone filed her Complaint years after the one-year statute of limitations expired, Count VI, her TILA claim, is time-barred. *See* 15 U.S.C. § 1640(e); *cf. Dubois*, 2010 WL 3463368, at *6 (dismissing federal law claims against FDIC-Receiver in similar case on timeliness grounds), *aff'd*, 2012 WL 5882567 (D.C. Cir. 2012).

It is well established that RICO claims are subject to a four-year statute of limitations period, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987), which begins to run "when a plaintiff knew or should have known of his injury," *Rotella v. Wood*, 528 U.S. 549, 553 (2000), *cited in Brown v. Wachovia Bank*, No. 07-5188, 2008 WL 2516476, at *1 (D.C. Cir. Feb. 26, 2008).[20] Ms. Youkelsone alleges that a RICO enterprise

---

[20] *Rotella* discussed the three approaches circuit courts had used in determining when RICO claims accrue. Although *Rotella* eliminated the "injury and pattern discovery" rule, and *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) eliminated the "last predicate act" rule, the Supreme Court in *Rotella* noted that an "injury occurrence" rule was also plausible in addition to the "injury discovery" rule used by several circuits. 528 U.S. at 554 & n.2. The D.C. Circuit has not

consisting of WaMu, WMI, and Fannie Mae engaged in a pattern of racketeering activity

encompassing conversion, unjust enrichment, and other illegal acts "including fraud, corruption,

concoction, imposition, improper influence upon the court," so that Ms. Youkelsone "was

deprived of any access to the State Courts . . . ." Compl. ¶¶ 211, 221.[21]  As discussed at length

above, the alleged injury underlying Ms. Youkelsone's RICO claim is one of which she was

certainly aware well before 2004.  *See Foreclosure Case Supreme Court Sanctions Opinion*, No.

36834/01, at *3 (discussing how Ms. Youkelsone alleged in 2002 a "conspiracy" consisting of

Fannie Mae, its attorneys, the New York Supreme Court Clerk's office, the Appellate Division's

deputy clerk, a court reporter, a Deputy Attorney General, and the New York Supreme Court

judge).  Ms. Youkelsone argues that her claim is also for predatory lending practices by WaMu,

Pl. Opp. at 58–59; even if WaMu did engage in predatory practices, however, she was no longer

affected by such practices once she paid off the Note and Mortgage in 2004, more than four

years in advance of filing this Complaint.  Certainly, she was not ignorant of the matters about

which she complains in her RICO claim and about which she has complained in other courts on

other occasions already.  Ms. Youkelsone's RICO claim, Count XII, is time-barred.  *Cf. Dubois*,

2010 WL 3463368, at *6.

---

spoken definitively on the issue but cited *Rotella*'s discussion of the "injury discovery" rule in its unpublished opinion in *Brown*, in which the district court applied the "injury discovery" rule to a RICO claim. The D.C. Circuit affirmed without discussing the issue in any meaningful way. Because the "injury occurrence" rule would be less favorable to Ms. Youkelsone than the "injury discovery" rule, the Court's conclusion does not hinge on this issue.

[21]  On a motion to dismiss, a court normally accepts all of a plaintiff's statements of fact, no matter how dubious or difficult to prove.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679. Given the history of Ms. Youkelsone's very active litigation in New York State courts, of which the Court has taken judicial notice, this particular allegation seems dubious at best.  When reviewing a complaint to determine if it is "facially plausible," a court is faced with "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

### 3.  Ms. Youkelsone's Alternative Arguments as to Timeliness

Ms. Youkelsone seeks to avoid application of the recited statutes of limitations on two bases.  First, she argues that she had filed a state court action in New York that tolled the statutes of limitation, Pl. Opp. at 17, and second, she argues that equitable tolling and/or estoppel should apply because of the continuing nature of the wrongful conduct and the alleged fraud, *id.* at 18–19.  Upon examination, neither argument can prevail.

Ms. Youkelsone relies on a "state court lawsuit [she initiated] in November 2008 against the Bank and its assignees which propelled a range of other lawsuits" as sufficient to toll the statute of limitations for the instant claims under N.Y. civil procedure rules.  Pl. Opp. at 17. New York State law permits a plaintiff to re-file her suit a second time if a first complaint were timely filed and *not* terminated by a voluntary dismissal, a failure to get personal jurisdiction over the defendant, a dismissal for failure to prosecute, or a final judgment on the merits.  N.Y. C.P.L.R. § 205(a) (McKinney 2012).  The Court understands Ms. Youkelsone to be referring to her lawsuit in the New York Supreme Court of Suffolk County against "Washington Mutual Home Loans."  *Youkelsone v. Wash. Mut. Home Loans*, No. 40405/2008 (N.Y. Sup. Ct. filed Feb. 9, 2009).[22]  But the New York civil procedure rules do not apply outside proceedings in

---

[22] The publicly available records from the New York Supreme Court reflect that the case is closed but do not yield further detail as to how the case was resolved.  In her Ms. Opposition to the motion to dismiss in the now-pending companion case, *Youkelsone v. Federal National Mortgage Association*, Civ. No. 10-1705, she describes the Suffolk County case as:

> The action [she] filed in November 2008 in [the] Supreme Court of New York, Suffolk County against Washington Mutual Home Loans, Washington Mutual Bank, Washington Mutual and its assignees and transferees.  The court allowed FDIC[-Receiver] to be substituted as a party for WaMu Bank . . . and then dismissed the action against FDIC on jurisdictional grounds leaving the claims against the other parties.

Pl. Opp. Dismiss Compl., Civ. No. 10-1705 [Dkt. 10] at 6.  According to Ms. Youkelsone, the Suffolk County action was "nearly identical" to her lawsuit against Fannie Mae, Civ. No. 10-

New York State courts.  *See* N.Y. C.P.L.R. § 101 (McKinney 2012) ("The civil practice law and rules shall govern the procedure in civil judicial proceedings in *all courts of the state* and before all judges, except where the procedure is regulated by inconsistent statute." (emphasis added)). The Federal District Court in the District of Columbia is not a New York State court.  In addition, it is "quite clear" that "filing an action in another jurisdiction does not toll the statute" of limitations for claims filed here.  *A.I. Trade*, 62 F.3d at 1467.  Ms. Youkelsone's reliance on New York procedural rules is misplaced.

Ms. Youkelsone also contends that "equitable tolling" or "estoppel" make her action timely for two reasons.  *See* Pl. Opp. at 18–19.  First, she insists that the improper course of conduct continued until 2009, when Fannie Mae officially terminated the Foreclosure Case. This argument is wrong on the law and the facts.  Under D.C. law, statutes of limitations begin to run when a plaintiff has, or reasonably should have, discovered his or her injury, not when a plaintiff stops being injured.  *See Farris*, 652 A.2d at 54.  Ms. Youkelsone's logic would necessarily make any claim timely so long as a plaintiff has not been made whole, which would be an absurd result.  Moreover, WaMu was not the plaintiff in the Foreclosure Case and had ceased to exist in September 2008 when FDIC-Receiver sold WaMu's assets and most of its liabilities to JPMorgan Chase.  *Bankruptcy Court Opinion*, 2010 WL 3238903, at *1.  The last act allegedly taken by WaMu occurred on October 24, 2004, when Ms. Youkelsone received the payout statement for closing on the sale of the property.  *See* Compl. ¶ 78.  That act predates the filing of this suit by almost five years.  Ms. Youkelsone advances no basis on which to toll the

---

1705, *see id.* at 8, and, by transitive property, nearly identical to the instant suit against FDIC-Receiver in the shoes of WaMu.  Presumably, because FDIC-Receiver was dismissed without a decision on the merits, Ms. Youkelsone believes New York procedural rules save her Complaint in this case.  However, as the text discusses, the state rule on which she relies has no application outside New York civil suits or outside New York State.

statutes of limitations against WaMu between October 2004, when WaMu allegedly delivered papers for closing the property sale, and October 2009, when the Foreclosure Case was formally ended.

Second, Ms. Youkelsone argues that equitable tolling is appropriate because she was not aware of WaMu and Fannie Mae's alleged wrongful conduct and because WaMu fraudulently concealed its actions from her, allegedly engaging in "deliberate concealment . . . [of] its true identity and true relation to [Ms. Youkelsone's] damages." Pl. Opp. at 19. But the Court has already taken judicial notice of the history of litigation over the foreclosure of her property including all the appeals, her bankruptcy case, and WMI's bankruptcy case, which clearly demonstrate otherwise. Ms. Youkelsone has been litigating this set of issues since 2001; she cannot now claim ignorance in 2003 and 2004. The cases she cites in support are completely inapposite, *see Davis v. Johnson*, 158 F.3d 806, 808–12 (5th Cir. 1998) (holding that AEDPA can be tolled in "in rare and exceptional circumstances") and *Hohri v. United States*, 782 F.2d 227, 249–50 (D.C. Cir. 1986), *vacated*, 482 U.S. 64 (1987) (applying equitable tolling in case described as "*sui generis*" in which government concealed lack of "military necessity" for internment of Japanese-Americans), or factually dissimilar, *see Celimar Solar v. Millenium Financial, Inc.*, Civ. No. 01-4327, 2002 WL 1019047, at *2–3 (E.D. Pa. May 17, 2002) (pre-"*Twiqbal*" case tolling statute of limitations for plaintiff with learning disability under Third Circuit precedent in case involving alleged concealed kickback scheme between mortgage broker and lender). Although Ms. Youkelsone is here *pro se*, she is also an attorney, as her pleadings make obvious, and she cannot claim either that actions by WaMu or the FDIC-Receiver or that ignorance of the law obstructed her efforts to remedy the wrongs she perceives. *See Halvonik v. Kappos*, 759 F. Supp. 2d 31, 32 n.1 (D.D.C. 2011) (holding that a *pro se*

attorney is "presumed to have knowledge of the legal system" and is "not entitled to the same level of solicitude often afforded" *pro se* litigants who are lack legal training).  The record, in any event, belies such arguments.

      For purposes of ruling on FDIC-Receiver's motion to dismiss, the Court takes the Complaint as pled and assumes that there was a cabal among WaMu, WMI and Fannie Mae that acted improperly to force Ms. Youkelsone from her Brooklyn property in and after 2001. Nonetheless, District of Columbia law does not permit this 2009 lawsuit based on alleged acts by WaMu.  The Court concludes and finds that the relevant statutes of limitations have run on all of Ms. Youkelsone's claims against WaMu and that none of her efforts to avoid that result is meritorious.

### B.  Claim Preclusion and Failure to State a Claim

      FDIC-Receiver also moves to dismiss Ms. Youkelsone's Complaint because she has previously contested the ownership and servicing of the Note and Mortgage and is now precluded from advancing associated claims here and because she has failed to state a claim as to any of the thirteen counts.  Because it concludes that Ms. Youkelsone's claims are all time-barred, the Court does not endeavor to untangle exactly which issues were resolved in which of Ms. Youkelsone's earlier cases and which claims are precluded in the instant case.   Instead, the Court observes that two courts have given preclusive effect to the New York Supreme Court Appellate Division's determination that the assignment to Fannie Mae was valid and, therefore, Ms. Youkelsone cannot allege ownership of the mortgage note by WaMu or WMI.  Those courts thus precluded her from raising claims related to the Foreclosure Case. *See Bankruptcy Court Opinion*, 2010 WL 3238903, at *9 ("Because Youkelsone is barred from contesting ownership of the mortgage note, the Court concludes that claims relating to the Foreclosure Action are barred by issue preclusion because ownership of the note is an essential element of those claims.");

*State Court Case Appellate Division Opinion*, 765 N.Y.S.2d at 792 ("To the extent plaintiff's claims are dependent upon the alleged invalidity of the assignment, an allegation conclusively rejected [in the Foreclosure Case], they are barred by the principles of collateral estoppel."). This Court, likewise, concludes that Ms. Youkelsone is precluded by collateral estoppel from complaining here against WaMu relating to the Foreclosure Case.  She has already fully litigated, and lost, her claims that either WaMu or WMI was liable for any related alleged misconduct.

That fact also reinforces the Court's skepticism that Ms. Youkelsone has stated a claim as to any of the thirteen counts alleged in the Complaint.  For example, if she cannot complain about the Foreclosure Case, she cannot state a claim for unjust enrichment deriving from the premise that the Foreclosure Act was wrongful.  *See* Compl. ¶ 147.  Moreover, FDIC-Receiver has offered persuasive arguments as to why each of Ms. Youkelsone's claims should be dismissed, and Ms. Youkelsone's responses are unconvincing.  *Compare* Def. Mem. at 19 (as to Count VI, observing that the version of TILA in effect in 2004 did not require delivery of payoff statements), *with* Pl. Opp. at 44 (responding merely that FDIC-Receiver's argument is "inapplicable"); *see also* Pl. Opp. at 45 (citing a case, *Marine Midland Bank v. Stukey*, 427 N.Y.S.2d 123 (App. Div. 1980), in support of "economic duress" claim, that holds that "[t]he threatened exercise of a legal right cannot constitute duress").  Thus, even if Ms. Youkelsone's claims were not time-barred, they would almost certainly be subject to dismissal for failure to state a claim.[23]

---

[23] Because Ms. Youkelsone's claims are time-barred and further amendment would therefore be futile, she will not be granted leave to file a Third Amended Complaint.  *See Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (reciting standard for amendment of complaint under Fed. R. Civ. P. 15(a)(2)).

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that all thirteen of Ms.

Youkelsone's claims are time-barred.  FDIC-Receiver's motion to dismiss will be granted, and

this case will be dismissed.

A memorializing Order accompanies this Opinion.

DATE: December 20, 2012

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
